## Willis U. Masters et al., Plffs. in Err., v. George Lauder et al.

In an action of assumpsit to hold the members of a limited company
liable as general partners, the claim set forth: (1) That three fourths of
the capital had not been paid in at the formation of the company; and (2)
that a portion of the capital had been used in purchasing real estate which
had been conveyed to the individual members of the company as "partners
under the firm name and style of the ———" (blank), and that the title
was never conveyed to the limited association.    The affidavit of defense
averred that the capital had been properly paid in and that the real estate
had been bought and held for the use of the company and that the de-
fendant affiant had no dealings with the plaintiffs, except as a member of
the limited company.    *Held*, that there was no error in discharging a rule
for judgment for want of a sufficient affidavit of defense.

(Argued November 8, 1887.    Decided January 3, 1888.)

October Term, 1887, No. 259, W. D., before GORDON, Ch. J.,
PAXSON, STERRETT, and WILLIAMS, JJ.    Error to the Common
Pleas No. 1 of Allegheny County to review a judgment refusing
a judgment for want of a sufficient affidavit of defense in an ac-
tion of assumpsit.    Affirmed.

Assumpsit by Willis U. Masters and Edward C. Pope, late
partners as Masters & Company, against George Lauder, F. H.
Oliphant, and S. D. Oliphant, partners, doing business as Wam-
pum Iron Company, Limited.

The affidavit of claim set forth "that George Lauder, F. H.
Oliphant, and S. D. Oliphant, late partners, doing business un-

NOTE.—For the organization of limited partnerships, and the liability·
of the members thereof as general partners, see note to Pears v. Barnes,
1 Sad. Rep. 165.

der the name and style of Wampum Iron Company, Limited, are justly and truly and legally indebted unto the said plaintiffs, late partners as Masters & Company in the sum of $7,676.57, with interest thereon from February 20, 1883, and that such indebtedness arises as follows:

"Said Wampum Iron Company, Limited, was a manufacturer of pig iron at Wampum, Lawrence county, Pennsylvania. Said plaintiffs were commission merchants or brokers in iron and were the agents of said company for selling its iron. From time to time iron was turned over by said company to said plaintiffs, who paid and advanced moneys to and for the benefit of said defendants—the Wampum Iron Company, Limited—at their request. The moneys so advanced largely exceeded the security held by plaintiffs; and on February 20, 1883, the balance due said plaintiffs for moneys so advanced, commissions upon the sale of iron for said company by them, and interest, was the sum of $24,086.24. On or about that date an account stated was made and agreed upon between said plaintiffs and said company, in and by which it was admitted and agreed that the amount so due said plaintiffs was said sum of $24,086.24. And on the 20th day of February, 1883, an amicable action was entered by said Masters & Company against the Wampum Iron Company, Limited, in the court of common pleas of said Lawrence county in which the said Oliphants admitted in writing the correctness of the said account, showing said balance to be due said plaintiffs, and on behalf of said company, as officers therein, confessed judgment in favor of said plaintiffs and against said Wampum Iron Company, Limited, for said sum of $24,086.24. . . . Judgment was duly entered in the same case; and by process of law the amount of $16,409.67 in all was afterwards collected upon said judgment, leaving due the said amount hereinbefore claimed.

"It is true said defendants attempted to form a limited partnership association under the act of assembly of June 2, 1874, and its supplements; but as affiant is informed and believes and expects to be able to prove, they did not proceed in accordance with the requirements of said acts of assembly, so as to bring themselves within the protection thereof. According to their articles of association, bearing date January 25, 1881, the total capital of the association was $20,000, payable in money—three fourths at the signing of the said articles and one fourth at four

months from date. The said capital was divided into 200 shares, of which said Lauder subscribed for 100 shares, said F. H. Oliphant for 60, and said S. D. Oliphant for 40. Among the matters in which said defendants disregarded the provisions of the law, affiant believes, avers, and expects to be able to prove as follows:

"1. That three fourths of the amount of said capital was not paid into said association in money at the time of signing the said articles, and that the whole of said capital was never paid into said association; said company became insolvent, and in the year 1883 ceased to do business;

"2. That after the date or about the time of the date of said articles said defendants withdrew a large proportion of said amount of $20,000—being, as affiant believes, the sum of $12,000, and paid the same on account of purchase money for certain real estate situate in said county of Lawrence, which was conveyed to said defendants, 'partners under the firm name and style of the ———' (blank), by deed of William Bingham *et al.,* dated January 15, 1881, and it was so conveyed subject to a mortgage for $62,000; for a recited consideration of $62,000, which affiant presumes to be the amount of said mortgage. But said real estate was never conveyed to the said alleged limited partnership association, and the title remained in the said defendants as it was conveyed to them, until the said Oliphants, by deed dated February 23, 1885, conveyed their individual interests therein to said Lauder. After the insolvency of said company, in the latter part of February or in March, 1883, on said plaintiffs' learning that the assets of said company (as aforesaid) had been put into said real estate, they proposed to proceed against the same; and one of the said Oliphants then notified them that the said land could not be taken in execution against said association, because it was owned by the said defendants individually, and not by said association limited.

"To the extent of the amount so paid on account of purchase money on said mortgage—(if before [after?] the date and recording of said articles) the said defendants diminished and impaired the capital of said association, doing what was equivalent to dividing the said amount among themselves, and thereby injured said plaintiffs. And affiant believes and avers that all of said defendants consented to the said appropriation of that amount of the said capital so paid on account of purchase money

as aforesaid. Said plaintiffs had no notice or knowledge until after the said debt had been contracted that part of the capital had been abstracted from the assets of said company and had been misapplied as aforesaid. All the information which plaintiffs had upon the subject was such as to mislead them and induce them to believe that all of the said sum of $20,000 was employed as working capital in the business of said company, and was a proper basis of credit; and this was affiant's impression and belief at the time when said indebtedness was contracted.

"The business of manufacturing iron in which said company was engaged is one which requires large capital; and the failure to pay in the full amount of capital as aforesaid, and the withdrawal of part of the capital as aforesaid, left the amount of capital in the business totally inadequate for the necessities thereof, and made said company much weaker, and less able to withstand a financial strain.

"And even if no fraud were intended, or if it were the intention that said purchase of real estate should inure to the benefit of said company, yet the facts above detailed operated as a fraud upon the plaintiffs, for the reasons mentioned, and also because the withdrawal of said large amount, left the working capital of said company impaired and totally inadequate as aforesaid, and because the facts were concealed and the plaintiffs were misled with regard thereto. And affiant avers that the said plaintiffs have been injured and prejudiced by the aforesaid course of conduct of said defendants; and, as he is advised, that said defendants, even if they were ever within the protection of the said act of 1874 and its supplements, have, by the said course of conduct, forfeited all right to protection or benefit thereunder, and are all individually and personally liable to pay the said claim of plaintiffs and interest thereon as aforesaid.

"Said defendants are not entitled to any credit upon the amount hereinbefore claimed, but the whole of the said sum of $7,676.57, with interest as aforesaid, is by said defendants unto said plaintiffs wholly unpaid and due."

The affidavit of defense made by George Lauder averred that "defendant never had any dealings with the plaintiffs, except as a member of the Wampum Iron Company, Limited, a partnership duly organized under the act of 1874, relating to limited partnerships, and its several supplements.

"It is not true that deponent did not pay up in full his sub-

scription to the capital stock of said company, but, on the contrary, this deponent did pay the same in full, and in pursuance of the provision of said statute.

"The real estate that was purchased and used in the operations of said company was bought and held for its use, and not for deponent's use. Deponent does not at this time have access to the deeds and papers of said company, and is unable to admit or deny that the conveyances were made to the individual members of said company; but, even if such were the case, it was understood by the said members that such real estate was bought and held for the use and benefit of said company. And deponent is advised that the allegation that the conveyances were formally made to the individual members even if true would not make this defendant personally liable for the debts of said company."

An additional affidavit of defense averred "that in the articles of association of the Wampum Iron Company, Limited, it was provided that the capital stock should consist of the sum of $20,-000, payable in money—of which $15,000 were to be paid at the signing and execution of the said articles, and the remaining $5,000 at four months from said date; that the said sum of $15,-000 was in point of fact paid into the association at the time of the signing and execution of said articles."

The court discharged the rule for the judgment against George Lauder for want of a sufficient affidavit of defense.

The assignment of error specified the above action of the court.

*S. W. Cunningham,* for plaintiffs in error.—In Conrow v. Gravenstine, 17 W. N. C. 204, a special partner who was sued set up in his affidavit of defense that he was a special partner, and that he had paid in the full amount of his capital, etc., but he did not say that the sign was put up at the door, as provided by the supplement of 1865. It was held that this omission rendered his affidavit of defense insufficient, although by the terms of the act no penalty is expressly imposed for failure to put up a sign.

Gauged by the standard laid down in this case, the defense in the case at bar is certainly defective.

And so in Andrews v. Schott, 10 Pa. 47, a leading case, and Haddock v. Kiernan, 33 Pittsb. L. J. 147, special partners were held liable generally for violations of the act for which that penalty is not expressly imposed by its terms. See also Coffin's Ap-

peal, 106 Pa. 280; Richardson v. Hogg, 38 Pa. 153.; Guillou v. Peterson, 89 Pa. 163; Vandike v. Rosskam, 67 Pa. 330.

These authorities show beyond question the principle of construction adopted—that a rigid adherence to the terms of the act is required as the price of immunity, even in those respects in which the act in terms imposed no penalty for its disregard.

The act of 1836 professes to provide the penalty of general liability upon special partners for its violation, in many respects. The act of 1874 does not. For this very reason we maintain that the latter act is stronger and was more wisely drawn. Instead of saying what course of conduct will render parties generally liable, it states what course will give immunity from general liability—leaving it to the courts to decide what is material. As said in Eliot v. Himrod, 108 Pa. 569: "Each partner is liable unless saved by statute."

In Maloney v. Bruce, 94 Pa. 249, it is said, as to the act of 1874: "If parties seek to have all the advantages of a partnership, and yet limit their liability to creditors, they must comply strictly with the act." See also Lindley, Partn. *378.

In Pears v. Barnes, 1 Sad. Rep. 165, it was held by the court below and approved by this court, that the privileges are to be secured on the terms prescribed. The provisions are not merely directory, but are conditions imperative precedent to the vesting of the rights. The terms so fixed are the price. And as no partnership under the act of 1836 is a limited one unless formed in compliance with the act, the reason of this principle is applicable with double force under the act of 1874. See also Keystone Boot & Shoe Co. v. Shoellkopf, 11 W. N. C. 132.

But in two respects, more perhaps than any others, should a rigid adherence to the provisions of the acts be enforced: with regard to the payment of the capital, and its preservation intact as far as concerns the direct action of the members. The capital itself is a quasi trust fund. Coffin's Appeal, 106 Pa. 280; Lachaise v. Marks, 4 E. D. Smith, 610.

But a deliberate and intentional withdrawal of capital on the part of a special partner, even though it be not so expressly provided in the act, has been uniformly held to make him generally liable. Madison County Bank v. Gould, 5 Hill, 309; Lachaise v. Marks, 4 E. D. Smith, 610; Lineweaver v. Slagle, 64 Md. 465, 54 Am. Rep. 775, 2 Atl. 693.

This doctrine has been distinctly recognized by this court in

Hogg v. Orgill, 34 Pa. 344–353; and Singer v. Kelly, 44 Pa. 145.

The design of the acts of assembly in requiring the recording of the articles is to inform the public and persons dealing with limited partnerships as to the capital. Haddock v. Kiernan, 33 Pittsb. L. J. 147; Maloney v. Bruce, 94 Pa. 249; Pears v. Barnes, 1 Sad. Rep. 165; Lineweaver v. Slagle, 64 Md. 465, 54 Am. Rep. 775, 2 Atl. 693.

Although it is admitted in our case that plaintiffs sustained damages through the defendants' conduct in the premises, yet it seems to be well settled that it is not necessary for the creditor to show any injury. As said in Bates, Limited Partnership, § 51: A creditor need not show that he has been injured by the noncompliance relied on to make a special partner liable. See also Pierce v. Bryant, 5 Allen, 91; Durant v. Abendroth, 69 N. Y. 148, 25 Am. Rep. 158; Smith v. Argall, 6 Hill, 479.

But even if their intent were material, yet, in the face of the admitted facts, defendants cannot be heard to aver an inconsistent intent. A person's intent is to be deduced from his actions, and not learned from his subsequent testimony. Lineweaver v. Slagle, 64 Md. 465, 54 Am. Rep. 775, 2 Atl. 693; Ecker v. McAllister, 45 Md. 290; Spencer v. Colt, 89 Pa. 314.

The leading case as to the effect of such a purchase of real estate as was made in this is Madison County Bank v. Gould, 5 Hill, 309. This was decided by the supreme court of New York in 1843, when, we believe, that was the court of last resort. A special partnership had been formed under a statute with which our act of 1836 is identical. A conveyance of real estate had been taken in the name of all the partners including Gould, the special partner; and one question was whether this would render him liable as a general partner, although there was no clause in the act providing for liability by reason of withdrawal of capital. Yet it was held that such a course would render the special partner generally liable, if he consented to it. See also Ward v. Newell, 42 Barb. 485; Hogg v. Orgill, 34 Pa. 344; and Singer v. Kelly, 44 Pa. 145.

*George Shiras, Jr.,* for defendant in error.

PER CURIAM:
Judgment affirmed.